ZOLL, *Appellant* v. CARNAHAN *et al.*

83   35
103  822

83   35
46a  535

83   35
163  448
88a  585

1. **Vendor's Lien, Nature of.** A vendor's lien is a relative rather than an absolute right. It is qualified by the condition that it shall not operate against *bona fide* purchasers without notice, and that the vendor shall not sleep too long on his rights.

2. **Statute of Limitations:** VENDOR'S LIEN. A vendor of land must enforce his lien within ten years after his cause of action accrues.

3. ———: PLEADING. An acknowledgment in writing of the existence of a debt to save it from the bar of the statute of limitations, should be pleaded.

4. ———: A vendor of land by removing from the State cannot stop the running of the statute of limitations in favor of his vendee.

*Appeal from Johnson Circuit Court.*—HON. N. M. GIVAN, Judge.

AFFIRMED.

*Samuel P. Sparks* for appellant.

(1) That part of the answer setting up title acquired from Embree's heirs was inconsistent with the admission that Carnahan purchased of plaintiff, as administrator of Embree, so the motion to strike out should have prevailed. R. S., § 3523; *Atterbury v. Powell*, 29 Mo. 429: *Nelson v. Brodhack*, 44 Mo. 596. (2) The matter sought to be stricken out being inconsistent, the deed from Embree's heirs to Carnahan in support of this defense was inadmissible, because its effect was to contradict the fact admitted by the same answer, that Carnahan had purchased of plaintiff. *State v. Roberts*, 62 Mo. 388. (3) The defendant, Carnahan, never having received any conveyance from his vendor, could not set up a title adverse to him, and his grantee is in no better situation. *Macklot v. Dubrenil*, 9 Mo. 480; *Budd v. Collins*, 69 Mo. 71. (4) All that Carnahan acquired by his purchase and part payment of the purchase money was an incomplete equity

and all the subsequent grantees of his claim took subject to the equities between him and his vendor. *Jasper Co. v. Travis*, 76 Mo. 13; *Skinner v. Parnell*, 52 Mo. 96; *Stewart v. Wood*, 63 Mo. 252. Under the pleadings the defendant, Baile, could not avail herself of the defense of innocent purchaser without notice, even though it had not been charged in the petition that she was a purchaser with notice. A *general denial* of notice is insufficient; she should have denied the fact of notice and of every circumstance from which it could have been inferred. *Murray v. Ballow*, 1 John. Ch. loc. cit. 575; Story Eq. Pl., §§ 805, 806 (4th Ed.); *Gellatain v. Erioin*, Hopk. 48; Kerr on Frd. and Mist. 302–3 (Eng. Ed.); *Haughtwaut v. Murphy*, 22 N. J. Eq.; *Rice v. Bunce*, 49 Mo.

The defendant, Baile, before she had completed payment of the purchase money, had notice from Zoll that the deed had never been delivered to Carnahan for the reason that the purchase money had not all been paid. *Jewell v. Palmor*, 7 John. Ch. 65; 2 Story Eq. Jur. § 1502 (Ed. 1870); Story Eq. Pl., *supra*. To constitute one an innocent purchaser, such an one must have acquired the legal title; the purchaser of any equity is bound to take notice of and is bound by a prior equity. Between equities the maxim *qui prior est tempore potior est jure* applies. 1 Jones Mtgs. § 200; 6 Cent. L. J. pp. 459–460.

(5) This action was not barred against Carnahan by reason of his having become a non-resident shortly after his purchase—§ 3236, R. S.—and for the further reason that this action was commenced within ten years from Carnahan's letter, in which he acknowledged the debt in writing before the statute of ten years had run.

(6) The evidence fails to sustain the plea of adverse occupancy. One asserting title by adverse possession even where no privity exists, is held to the strictest proof. *Lynde v. Williams*, 68 Mo. *loc. cit.* 369, 370. But where it is otherwise, as between vendor and vendee, a still higher degree of proof is required. *Hamilton v. Boggess*,

63 Mo., *loc. cit.* 249–250; *Budd v. Collins,* 69 Mo. 129; *Fulkerson v. Brownlee,* .69 Mo. 371. This is not an action for the possession of real estate, but one for the enforcement of a lien and a statute of limitations in regard to adverse possession is not the appropriate plea.

*O. L. Houts* for respondent.

(1) Plaintiff's action is a real one and is barred by the statute. R. S., 1879, p. 543; *Rogers v. Brown,* 61 Mo. 187. (2) The fact that defendant, Carnahan, was a non-resident will not prevent the statute from running, because respondent, Baile, and her grantors being residents, have a right to invoke the statute, though Carnahan could not. In the second place, the exception relied on by plaintiff, created by § 3236, R. S., 1879, applies to personal actions and not to real actions, and plaintiff's remedy against the land is barred. *Rogers v. Brown, supra,* Revision 1855. (3) Plaintiff is *estopped* from asserting his claim. He twice asserted and made it a matter of record in 1867, that the purchase money for this land was paid. He remained silent for thirteen years, thereby directly leading defendant, Baile, and her grantors to put their money on the land. "He who will not speak when he should will not be allowed to speak when he would," much less having spoken be allowed to declare to the contrary, to the injury of those by his representations and actions induced to act. *Pelkington v. Nat. Ins. Co.,* 55 Mo. 172. (4) Plaintiff never had any lien on the land in question under the evidence. The deposit of title papers by Carnahan with plaintiff created no lien. *Vanmeter v. McFadden,* 8 B Mon, 437; *Curley Heirs v. Eddy,* 24 Mo. p. 117–124. The $176.14 sued on, the estate of Tarlton Embree owed plaintiff, not Carnahan. (5) There is no evidence tending to show notice to Baile of plaintiff's claim.

PHILIPS, C.—This is an action to enforce a vendor's lien on lots 1 and 2 of the northeast quarter of section 5,

township 45, range 25, situated in Johnson county. The facts in the case are substantially as follows: One Tarlton Embree died intestate, seized of the equitable title to said land in 1862. His heirs acquired the legal title and by deed with covenants of warranty conveyed the land to one Thomas L. Carnahan, dated December 21st, 1866. On the 12th day of January, 1867, said Carnahan conveyed the land by a like deed to Elizabeth Carnahan and Nancy Sharp, through whom the defendant, Sarah L. Baile, by mesne conveyances, claims title. The plaintiff, Zoll, as public administrator, took charge of the estate of said Embree, deceased. In the Spring of 1867, the said administrator obtained from the probate court of said county an order to sell this land to raise money to pay off the debts against the estate, under which the land was subsequently sold at a cash sale and the said Carnahan became the purchaser at the price of $2200. The administrator in due time made his report to the probate court of said sale showing the purchase by said Carnahan and the payment of the purchase money. The court approved the sale and ordered the administrator to make and deliver to Carnahan a deed to said land. The record of the probate court showed that at the time of said approval the administrator acknowledged in due form deed to said Carnahan. The administrator at the following October term, 1867, of said probate court, made his final settlement of said estate, charging himself with said $2200 as having been paid by Carnahan, showing a balance due the administrator of $176.14 against the estate which settlement was by the court approved.

The petition in this case was filed on the 14th day of September, 1880. It sets out the facts of the administration resulting in the sale of said lands to Carnahan and the report thereof to the probate court and its approval of the sale and the order touching the making of the deed, and its acknowledgment as aforesaid; but charges that Carnahan, in fact, did not pay all the purchase money, and that the said sum of $176.14 was the balance of purchase

money unpaid by him, and that the plaintiff never delivered the deed to Carnahan because he had not paid the whole of the purchase money. The petition charges that the purchasers under Carnahan, including the defendant, Baile, took with notice of the fact that said purchase money was not paid by Carnahan. It is also alleged that in the fall of 1867, said Carnahan had left the state and taken up his residence in another state. The prayer of the petition is to enforce the lien of plaintiff as a vendor against the land, for the recovery of said balance of purchase money.

The answer admits the proceedings in administration, the sale of the land thereunder to Carnahan, the report of sale and its approval, etc., and the mesne conveyances, but denies generally the other allegations of the petition. It then sets up the facts touching the purchase of said land by Carnahan from the heirs of Embree prior to the proceedings by the administrator for the sale of the land, and that Carnahan took possession under his purchase from the heirs. It, also, pleads the statute of ten years' limitations against the action of plaintiff and adverse possession, etc.

The replication tendered the general issue to the new matter set out in the answer. Outside of such notice as the records impart, it is not apparent that any of the purchasers under whom the defendant, Baile, claims title, or that she had any notice of the fact that any of the purchase money in question was unpaid by Carnahan at the time of their respective purchases. There was some evidence that the plaintiff stated to one Ridings—one of the intermediate purchasers of the land—that the purchase money was not all paid, but this seems to have been subsequent to the date of Ridings' purchase. The defendant, Baile, testified denying any notice whatever of the existence of the debt or lien, and there was no countervailing proof. The plaintiff claims, however, that she had notice before she paid all the purchase money, but she testified that her son had paid the purchase money for

her before she knew of the fact, etc. The court found the issues for the defendants and dismissed the bill. From this judgment the plaintiff prosecutes this appeal.

I. It is important in the consideration of this case to bear in mind that Carnahan, under whom the defendant, Baile, claims title, received a deed to the disputed premises from the heirs of Embree with covenants of title under the statute, prior to the sale under the administration proceedings. By this deed Carnahan, in addition to the fee of the heirs, acquired the dower interest of Embree's widow. Also, that Carnahan conveyed, with a like covenant of title, to other parties, through whom the defendant, Baile, claims prior to such proceeding by the administrator. It may be conceded for the purposes of this case that the landed estate of Embree was subject to sale by his administrator for debts of the estate and that no antecedent act or deed of the heirs, other than the widow, could defeat this liability for such debts. *Wolf v. Robinson* 20 Mo. 460; *Chambers' Adm'r v. Wright's Heirs*, 40 Mo. 482. It may be further conceded that had a stranger to the former grants become the purchaser at the administration sale he would have acquired the paramount right. But when Carnahan himself became the purchaser, subsequent to his warranty deed, any legal title and estate so acquired by him enured to the benefit of his grantee by virtue of the statutory covenants of his former deed. Such covenants would operate as an estoppel against him and his heirs and privies to any subsequently acquired equitable estate therein. It was competent for the defendant, Baile, under her answer, to introduce in evidence the deed of the heirs of Embree to Carnahan and the latter's deed to Carnahan and Sharp. Both titles originated in Embree and there was no inconsistency in the fact of defendant holding the deed from the heirs and the subsequent proceedings by the administrator. If the holding of the land by defendant's grantors began under the deed from the heirs it was certainly competent for defendant to

show the fact as bearing on the issue of the statute of limitations.

It is not the case of a defendant, as in the action of ejectment, asserting title under a common grantor or one deed, while attempting to set up an outstanding title. The real estate of the intestate descended to his heirs. The administrator took no interest therein but a mere naked power to sell for the payment of debts. *Chambers' Adm'r v. Wright's Heirs, supra.* Both the right of possession and title were in the heirs when Carnahan bought from them, and this right passed to his grantees by his deed of January 12, 1867. It is true they took *cum onere*, subject to sale by the administrator for the debts of the intestate and the right of entry by the purchaser thereunder. And we may, also, concede that Zoll, the administrator, was entitled to a vendor's lien as against the purchaser and those having notice for any unpaid purchase money. But a vendor's lien is a relative rather than an absolute right. It is ever qualified by the condition that it shall not operate against *bona fide* purchasers without notice, and that the vendor shall not sleep too long upon his right.

II.   A cause of action for the enforcement of the vendor's lien accrued to Mr. Zoll as early as July, 1867, as shown by his petition. Yet this action was not instituted until the 14th day of September, 1880—a delay of thirteen years. This lien, resting on evidence *in pais*, belongs to that class of implied trusts to which the statute of limitation applies. *Keeton's Heirs v. Keeton's Adm'r*, 20 Mo. 530; *Smith v. Ricords*, 52 Mo. 581. This being an action *in rem* to enforce a lien on real estate, the plaintiff had ten years in which to bring his suit, unless precluded by some countervailing equity. *Hunter v. Hunter*, 50 Mo. 445; *Rogers v. Brown*, 61 Mo. 1876. Unless, therefore, there be something disclosed by this record to explain and excuse in law this delay, this action is barred by lapse of time.

III.   The plaintiff relies upon two facts to exempt

his cause from the limitation: First, the absence of the defendant, Carnahan, from the state subsequent to the accruing of the cause of action, and, second, his recognition in writing of the existence of the debt to Zoll and promise to pay it. It might be sufficient answer to the latter of these excuses to say that the plaintiff has not so pleaded the same as to admit any such evidence. He neither pleaded any such fact in his petition, as suggested to be the proper course in *Keeton's Heirs v. Keeton's Adm'r, supra,* nor did he allege it in his replication, as doubtless would be permissible under the practice act. In either event he should have adopted one or the other of these modes to prevent any such issue. 2 Greenl. Ev., § 440; *Northrup v. The Miss. V. Ins. Co.,* 47 Mo. 443-4; 32 Mo. 461; 63 Mo. 192; 2 Comst. (N. Y.) 361, 506. It is provided by statute (§ 3236, R. S.), that: "If, at any time when any cause of action herein specified accrues against any person who is a resident of this state, and he is absent therefrom, such action may be commenced within the times herein respectively limited, after the return of such person to the state; and if, after such cause of action shall have accrued, such person depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." Plaintiff relies on the second clause of this section.

Even if this provision applied to the proceeding *in rem,* the proof should show two facts: First, that at the time the cause of action accrued the debtor was a resident of this state, and, second, that thereafter he departed from and resided out of the state. The only evidence touching this issue is that of the plaintiff, who testified that "Carnahan left the state sometime during the fall of 1867, and went to Illinois and took up his residence, where he has ever since resided." It is not directly affirmed that he ever resided in this state. The fact of such residence can only be inferred from the language, he "left the state." This could well consist with the

fact that he was a mere visitor here without having acquired a residence. The court hearing the evidence and seeing the witnesses found the issue for the defendant, and we do not feel justified on so meagre a statement in the bill of exceptions in disturbing the finding.

There are respectable authorities holding that the limitation prescribed in the foregoing statute does not apply to a proceeding *in rem*, but only to actions *in personam*. *Anderson v. Baxter*, 4 Oregon 105; *Eubanks v. Leveridge*, 4 Sawyer 274. Contra, *Whalley v. Eldridge*, 24 Minn. 358; *Emory v. Keighan*, 94 Ill. 543. In *Smith v Ricord*, 52 Mo. 581–583, Adams, J., in delivering the opinion seems to have entertained the view that the absence from the state did not interrupt the running of the statute. But it is not essential to the determination of this case finally that we should pass upon this question.

IV. There is another principle of law well settled, applicable both to the alleged absence from the state and subsequent promise to pay by Carnahan, which effectually meets the contention of plaintiff. The statute of limitations began to run in favor of those purchasing from Carnahan, in July, 1867, and unless interrupted by some act of theirs would continue to run. It is a familiar principle of law that an assignor or grantor can do no act nor make any admission subsequent to the assignment or grant to impeach or impress the title of his assignee or grantee any more than the act or admission of a mere stranger. *Steward v. Thomas*, 35 Mo. 202; *Gutzweiler's Adm'r v. Lockmann*, 39 Mo. 91; *Weinrich v. Porter*, 47 Mo. 293; 1 Greenl. Ev., § 180; *The Keystone Manf. Co. v. Johnson*, 50 Io. 142; *Campbell v. Coon*, 51 Ind. 76; *Funkhouser v. Lay*, 78 Mo. 458; *McShane v. City of Moberly*, 79 Mo. 43. If Carnahan, after he had parted with whatever interest and estate he acquired from Zoll, could by removal from the state, or part payment, or promise to pay, stop the running of the statute of limitations in favor of his grantee, he might perpetuate indefinitely the lien against the land in the hands of his vendee without his

vendee's knowledge or consent. It would introduce a new rule of evidence and burden conveyances of property with new incidents and liabilities and possibly require the introduction of a new covenant against the subsequent acts and declarations of the grantor. The authorities, as well as reason and natural justice, stand opposed to such a doctrine.

This question was considered in California, in *Lord v. Morris*, 18 Cal. 482. Field, C. J., p. 490, said: "The mortgageor, after disposing of the premises by deed of sale, loses all control over them. His personal liability thereby becomes separated from the ownership of the land, and he can by no subsequent act create or revive charges upon the premises. He is as to the premises thenceforth a mere stranger. * * . He cannot at his pleasure affect the interests of other parties." In *Wood v. Goodfellow*, 43 Cal. 185, it is again held that as against subsequent incumbrances, or a subsequent holder of the equity of redemption, the mortgageor has no power to stipulate to prolong the time of payment or in any manner increase the burdens of or affect the premises.

This question came before the supreme court of Kansas in *Schmucker v. Sibert*, 18 Kan. 104. Brewer, J., p. 111., says: "If, therefore, the mortgageor no longer owns the property, he cannot impose a burden upon it—his power to bind the property has ceased. He is as powerless over it as though he had never owned it. He can revive the note, as he can give a new note, for no rights but his own are involved. He can revive the old mortgage just so far, and so far only, as he could give a new mortgage, and that is to bind his own property." This doctrine is likewise asserted by the supreme court of Iowa in *Day v. Baldwin*, 34 Iowa, 380.

There is another ground upon which I am of opinion the plaintiff's action should fail, and this is his laches. But the foregoing is sufficient to determine this controversy. The judgment of the circuit court should therefore be affirmed. All concur.